RICK GARDNER,          )
                             )
Plaintiff,              )
                             )
v.                   )
                             )
KRISTI NOEM,         )
in her official capacity as Secretary of  )
the Department of Homeland Security;  )
                             )
TRANSPORTATION SECURITY  )    CASE No. 25-cv-03301-WBG
ADMINISTRATION;         )
                             )
JASON BLACKWELL,      )
in his individual and official capacity  )
as Transportation Security Manager;  )
                             )
SCOTT HOLUBEC, in his individual  )
and official capacity as Transportation  )
Security Manager;         )
                             )
And                )
                             )
CHARLES KIRKLAND, in his individual and  )
official capacity as Transportation  )
Security Manager,        )
                             )
Defendants.          )

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

### INTRODUCTION

1. This is an action for disability discrimination, retaliation, hostile work environment, and related violations under the Rehabilitation Act of 1973, 29 U.S.C. § 791 et seq., and other applicable federal laws. Plaintiff Rick Gardner brings this action against Defendants for their systematic campaign of discrimination, harassment, and retaliation that began after he engaged in protected EEO activity and continues to this day.

1

## JURISDICTION AND VENUE

2. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 (federal question jurisdiction) and 29 U.S.C. § 794a (Rehabilitation Act).

3. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because the events giving rise to this complaint occurred at Springfield-Branson National Airport (SGF) in Springfield, Missouri, which is within this judicial district.

## PARTIES

4. Plaintiff Rick Gardner ("Plaintiff" or "Mr. Gardner") is a former Transportation Security Officer who worked for the Transportation Security Administration from March 2018 until June 2024. He is an individual with disabilities who resides in Springfield, Missouri.

5. Defendant Alejandro Mayorkas is the Secretary of the Department of Homeland Security and is sued in his official capacity.

6. Defendant Transportation Security Administration ("TSA" or "Agency") is a federal agency within the Department of Homeland Security responsible for security screening at airports nationwide.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

7. Plaintiff has exhausted all required administrative remedies by filing multiple EEO complaints with TSA:

   a. EEOC No. 560-2023-00149X / Agency No. HS-TSA-00221-2023 (filed October 31, 2022)

   b. EEOC No. 560-2024-00091X / Agency No. HS-TSA-02376-2023

2

c. Agency No. HS-TSA-01284-2024 d. Agency No. HS-TSA-01711-2024 e. Agency No. HS-TSA-01160-2024 (filed March 20, 2024)

8. The EEOC and/or Agency have issued final decisions on these matters, and Plaintiff timely files this action within the statutory period. The administrative process has been fraught with procedural irregularities, including:

   a. TSA's initial attempt to dismiss claims as untimely despite Plaintiff's counsel contacting EEOC on September 8, 2022, and being directed to file with TSA;

   b. Multiple filings being lost or mishandled by the Agency;

   c. TSA's failure to properly maintain and process reasonable accommodation requests, with the Reasonable Accommodation office admitting they "never saw" requests from 2022 until March 2023;

   d. Pending appeals before the Merit Systems Protection Board (MSPB) regarding the constructive discharge and fitness for duty determination;

   e. An August 22, 2024, damages hearing where Administrative Judge Gus Buthman found in favor of Plaintiff on the gel mat accommodation claim

## STATEMENT OF FACTS

9. Plaintiff experiences multiple serious medical conditions that substantially limit major life activities, including chronic joint and nerve disease/injuries, testicular neuropathy, chondromalacia (kneecap cartilage deterioration), pulmonary conditions including asthma, and chronic pain requiring use of leg braces and other assistive devices.

10. Plaintiff has been approved for intermittent Family Medical Leave Act (FMLA) leave for his conditions since January 2020.

3

11. Beginning in July 2022, Plaintiff requested reasonable accommodations including exemption from mask-wearing requirements due to breathing difficulties, a gel mat to stand on during checkpoint duties, use of a chair with footstool, and ability to wear shorts to accommodate his leg braces.

12. On July 19, 2022, Plaintiff provided medical documentation to Supervisory TSO Miguel Bustos supporting his mask exemption request. Bustos informed Plaintiff that TSM Scott Holubec deemed the documentation "insufficient" and told Plaintiff he must wear a mask or go home.

13. Despite submitting proper reasonable accommodation forms, TSA failed to timely respond to Plaintiff's requests, violating the interactive process requirements under federal law. TSA management never engaged in good faith discussions about alternative accommodations or explained what additional documentation would be considered sufficient.

14. After Plaintiff filed his initial EEO complaint in September 2022, TSA management began a systematic campaign of retaliation.

15. In January 2020, a management official told Plaintiff regarding his workers' compensation claim: "Are you that stupid to believe we will pay any of your bills. TSA will not pay anything for this."

16. In December 2021, management required Plaintiff to change administrative leave to sick leave and yelled at him: "I have not released you; you are going to sit back down in that chair."

4

17. On July 24, 2022, management officials discussed Plaintiff's confidential medical information in a public area at work where coworkers could overhear, violating the Rehabilitation Act's confidentiality provisions.

18. On November 24, 2022, STSO Miguel Bustos accused Plaintiff of allowing an unauthorized person through security. When Plaintiff requested to view the CCTV footage, management refused. To date, no member of SGF TSA management has provided the video evidence, raising serious questions about whether the incident occurred as alleged.

19. In January 2023, Plaintiff was injured in a covered parking lot at work. A supervisor confirmed the injury was covered by workers' compensation. After Plaintiff filed a claim, TSA falsely denied he was injured at work, causing the claim to be denied. Two employees witnessed Plaintiff's injury and noted it at the time, contradicting TSA's false statements to the workers' compensation carrier.

20. On April 15, 2023, Lead TSO Derek Baker told Plaintiff his leg brace looked "really stupid" and that he should not be allowed to wear shorts. This derogatory comment about Plaintiff's disability-related medical device was witnessed by coworker Chris Kolenda.

21. On May 1, 2023, STSO Bustos told Plaintiff he must report to work before 3:30 AM (his scheduled start time) and that management was "watching [him] very closely." Plaintiff was required to be on the checkpoint at 3:29 AM while other employees, including Kristina Ankrom, were not subjected to similar requirements.

22. In August 2023, despite TSA policy requiring updated medical documentation for light duty assignments, Plaintiff was returned to full duty on August 17, 2023, without providing any additional documentation - directly contradicting management's earlier stance that his paperwork was insufficient.

5

23. In September 2023, Manager Jason Blackwell required Plaintiff to submit updated reasonable accommodation forms despite having sufficient information on file. Blackwell called Plaintiff into his office solely to harass him about his leg braces, questioning whether his disability was "visible or valid."

24. In October 2023, Manager Blackwell denied Plaintiff's administrative leave requests for October 11, 13, and 20, 2023, despite a directive from Assistant Federal Security Director Brian Meadows allowing administrative leave in place of pre-approved sick leave. The same coding used for the denied days was approved for October 20, showing pretextual discrimination.

25. During depositions, multiple TSA managers made false statements under oath. STSO Bustos testified he personally spoke to Officer Ankrom about the May 2023 incident, which never occurred. Managers Holubec and Blackwell lied about Supervisor Paula Roby's medical status. Management witnesses provided inconsistent and false testimony throughout the proceedings.

26. The cumulative effect of these actions created a severe and pervasive hostile work environment based on Plaintiff's disability and in retaliation for his protected EEO activity. The harassment and discrimination culminated in Plaintiff's termination on June 15, 2024, when TSA removed him from his position after deeming him "Not Medically Qualified" for the TSO position, despite Plaintiff having provided documentation that he was in the process of obtaining medical retirement.

27. Throughout this period, TSA management's actions violated multiple federal laws including the Rehabilitation Act of 1973, the Americans with Disabilities Act, and anti-retaliation provisions of federal EEO law. The pattern of discrimination intensified

6

following Plaintiff's September 2022 EEO complaint, demonstrating clear retaliatory animus and creating working conditions so intolerable that a reasonable person in Plaintiff's position would have felt compelled to resign.

**CAUSES OF ACTION**

**COUNT I - DISABILITY DISCRIMINATION**
**(Rehabilitation Act § 504)**

28. Plaintiff realleges and incorporates paragraphs 1-27 above.

29. Plaintiff is a qualified individual with disabilities within the meaning of Section 504 of the Rehabilitation Act, 29 U.S.C. § 794, who can perform the essential functions of his position with reasonable accommodations. At all relevant times, Plaintiff satisfied the essential eligibility requirements for his position and the benefits and services provided by Defendants. Plaintiff suffers from bilateral knee disabilities, including chondromalacia (cartilage deterioration) in both knees, joint disease, and neuropathy, which substantially limits his ability to stand for extended periods and perform other major life activities.

30. Defendants discriminated against Plaintiff on the basis of his disabilities in violation of Section 504 by denying him meaningful access to programs, benefits, and services for which he was otherwise qualified. Specifically, Defendants unreasonably delayed Plaintiff's requests for reasonable accommodations necessary for him to perform the essential functions of his position. Plaintiff requested floor mats to accommodate his knee condition beginning in 2022, which were discussed during mediation in December 2022, yet Defendants claimed they never saw these requests until March 2023 and did not provide the requested accommodation until December 27, 2023 - over a year after the initial request. This delay violated Defendants' obligation to engage in the interactive process and

7

provide reasonable accommodations in a timely manner as required by 29 C.F.R. § 1630.2(o).

31. Defendants subjected Plaintiff to different and less favorable terms and conditions of employment than similarly situated employees without disabilities in violation of 34 C.F.R. § 104.4(b). This disparate treatment included heightened scrutiny of his attendance and time records, with management officials specifically monitoring when Plaintiff clocked in and instructing him about arrival times when other employees were not subjected to such scrutiny. Defendants also treated Plaintiff's disability-related needs with suspicion, including questioning his light duty status beyond its expiration date and failing to properly manage his return to full duty status.

32. Defendants violated the confidentiality provisions of the Rehabilitation Act by improperly disclosing Plaintiff's medical information. As set forth in 29 C.F.R. § 1630.14(c)(1), medical information must be kept confidential and maintained on separate forms in separate medical files. Here, management officials discussed Plaintiff's medical conditions and restrictions in areas where other employees could overhear. Specifically, on July 24, 2022, TSO Michael Vernatti overheard Bustos and Holubec discussing Plaintiff's doctor's note, and TSO Patrick Patterson heard one of them comment "He just doesn't want to wear a mask," thereby violating Plaintiff's right to medical privacy.

33. Defendants' discriminatory conduct created and maintained a hostile work environment based on Plaintiff's disabilities, subjecting him to unwelcome conduct that was sufficiently severe and pervasive to alter the conditions of his employment. This hostile environment included management's pattern of ignoring accommodation requests, coworkers complaining about Plaintiff's light duty assignments, and supervisors treating his medical

needs as burdensome rather than engaging in good faith in the interactive process required by law.

34. Defendants ultimately determined Plaintiff was "not medically qualified" for his position in May 2024, despite his ability to perform the essential functions with reasonable accommodations. This fitness for duty determination, coming after years of Plaintiff performing his duties with various accommodations, evidences discrimination based on stereotypes about individuals with disabilities rather than an individualized assessment of his actual abilities.

35. As a direct and proximate result of Defendants' unlawful discrimination, Plaintiff has suffered damages including lost wages following his termination from employment on June 15, 2024, loss of employment benefits including health insurance, emotional distress from the hostile work environment and discriminatory treatment, and other compensatory damages in amounts to be proven at trial. Plaintiff is entitled to injunctive relief, compensatory damages, and attorneys' fees and costs pursuant to Section 505 of the Rehabilitation Act, 29 U.S.C. § 794a.

## COUNT II - RETALIATION (Rehabilitation Act)

36. Plaintiff realleges and incorporates paragraphs 1-35 above.

37. Plaintiff engaged in protected activity under the Rehabilitation Act by filing formal EEO complaints challenging Defendants' discriminatory practices and requesting reasonable accommodations for his disabilities. Specifically, Plaintiff filed EEO complaints numbered HS-TSA-00221-2023, HS-TSA-01711-2024, and HS-TSA-01284-2024. These activities

constitute protected opposition to practices made unlawful by Section 504 of the Rehabilitation Act.

38. Defendants were aware of Plaintiff's protected activity, as management officials including STSO Bustos and TSM Blackwell acknowledged becoming aware of Plaintiff's EEO complaints when they received requests for affidavits in March 2023 and December 2023. The record establishes that multiple levels of management had actual knowledge of Plaintiff's protected activity.

39. Following Plaintiff's protected activity, Defendants subjected him to materially adverse actions that would dissuade a reasonable employee from engaging in protected activity. These retaliatory actions included increased scrutiny and monitoring of Plaintiff's daily activities after management became aware of his EEO complaints, disparate treatment regarding his light duty assignments with management questioning his status even when other employees in similar situations were not questioned, delays in processing his accommodation requests that became more pronounced after his EEO activity, and management's pattern of treating Plaintiff's legitimate medical needs with suspicion and hostility following his protected activity.

40. The causal connection between Plaintiff's protected activity and the adverse actions is established through temporal proximity and the pattern of escalating adverse treatment. The documented pattern shows that following each EEO complaint, management's scrutiny and adverse actions intensified, including the November 24, 2022, security breach accusation occurring less than two months after his initial EEO filing, and the escalating denials of leave requests throughout 2023 and 2024. The persistence and escalation of

adverse treatment following each instance of protected activity demonstrates retaliatory motive.

41. Defendants' retaliatory actions culminated in the May 2024 determination that Plaintiff was "not medically qualified" for his position, effectively ending his federal career. This adverse action, coming after Plaintiff's multiple EEO complaints and ongoing requests for accommodation, represents the ultimate retaliation for his protected activity.

42. As a direct and proximate result of Defendants' unlawful retaliation, Plaintiff has suffered damages including lost wages and benefits following his separation from federal service, emotional distress from the ongoing harassment and hostile work environment, damage to his professional reputation, and loss of his federal career after six years of service. Plaintiff is entitled to all relief available under Section 505 of the Rehabilitation Act, including reinstatement or front pay, compensatory damages, injunctive relief, and attorneys' fees and costs.

43. Plaintiff also requested the accommodation to wear shorts to work when temperatures exceeded 75 degrees, which was necessary to properly accommodate his leg braces. On April 15, 2023, when Plaintiff exercised this accommodation by wearing shorts that revealed his medically necessary leg brace, Lead TSO Derek Baker told Plaintiff that his leg brace looked "really stupid" and that he should not be allowed to wear shorts. This derogatory comment about Plaintiff's disability-related medical device, witnessed by coworker Chris Kolenda, demonstrates Defendants' hostility toward even the most basic accommodations for Plaintiff's mobility impairments and created additional barriers to Plaintiff utilizing necessary accommodations.

## COUNT III - FAILURE TO ACCOMMODATE

### (Rehabilitation Act)

44. Plaintiff realleges and incorporates paragraphs 1-43 above.

45. Plaintiff is an individual with disabilities who requested reasonable accommodations necessitated by his disabilities as required under Section 504 of the Rehabilitation Act and its implementing regulations at 29 C.F.R. § 1630.2(o). To establish a failure to accommodate claim, Plaintiff must show: (1) he is a qualified individual with a disability; (2) Defendants were aware of his disability; and (3) Defendants failed to provide reasonable accommodations. See EEOC Enforcement Guidance on Reasonable Accommodation and Undue Hardship under the Americans with Disabilities Act, EEOC Notice No. 915.002 (Oct. 17, 2002).

46. Plaintiff timely requested multiple reasonable accommodations for his disabilities, including a mask exemption accommodation due to medical conditions that made mask-wearing difficult, floor mats or gel mats to alleviate pain from standing on hard surfaces due to his bilateral knee condition, and appropriate leave accommodations for his multiple medical conditions including orthopedic and other health issues.

47. Defendants failed to engage in the interactive process as required by law and unreasonably delayed providing requested accommodations. Specifically, regarding the floor mat accommodation, Plaintiff submitted requests beginning in 2022 which were discussed during EEO mediation in December 2022, yet Defendants claimed they never saw these requests until March 2023. The Reasonable Accommodation Program Office did not begin processing the request until October 2023, and floor mats were not provided until December 27, 2023 - over a year after the initial request. This delay violated the

requirement to respond to accommodation requests promptly and engage in good faith in the interactive process.

48. The record demonstrates systemic failures in the reasonable accommodation process. Management's admission that they "never saw" the July 2022 accommodation request until March 2023, despite Gardner submitting it directly to his supervisor, evidences a breakdown in the accommodation process. Manager Blackwell did not forward the gel mat request to Human Resources or RAPO until August 2023, more than a year after receiving it.

49. Regarding the mask accommodation, while Plaintiff's request eventually became moot due to changing COVID-19 community levels, Defendants failed to act on the request in a timely manner, leaving Plaintiff without guidance on his accommodation status and forcing him to take personal leave while awaiting a response. The Reasonable Accommodation office's practice of not affirmatively granting or denying requests that became moot failed to provide Plaintiff with the clarity and certainty required in the accommodation process.

50. Defendants' failures forced Plaintiff to work without needed accommodations for extended periods, exacerbating his bilateral knee condition by requiring him to stand on hard surfaces without proper cushioning. Plaintiff's medical documentation confirmed he suffered from chondromalacia (cartilage deterioration) in both knees, making standing for extended periods painful and potentially damaging. The year-long delay in providing floor mats caused Plaintiff unnecessary pain and suffering that could have been avoided through timely accommodation.

51. As a direct result of Defendants' failure to accommodate, Plaintiff suffered physical pain, was forced to use leave time that could have been preserved had accommodations been

timely provided, experienced emotional distress from the uncertainty and delays, and ultimately faced questions about his fitness for duty that may not have arisen had proper accommodations been in place. These failures constitute discrimination under Section 504 of the Rehabilitation Act.

## COUNT IV - HOSTILE WORK ENVIRONMENT

### (Rehabilitation Act)

52. Plaintiff realleges and incorporates paragraphs 1-51 above.

53. To establish a hostile work environment claim, Plaintiff must show: (1) he is a member of a statutorily protected class; (2) he was subjected to unwelcome harassment; (3) the harassment was based on his protected class; (4) the harassment was sufficiently severe or pervasive to alter the conditions of employment and create an abusive working environment; and (5) there is a basis for imputing liability to the employer. See *Rafaela B. v. Dep't of Justice*, EEOC Appeal No. 2021002215 (Apr. 26, 2022).

54. Defendants subjected Plaintiff to unwelcome harassment based on his disability and in retaliation for his protected EEO activity. The harassment included management officials and coworkers making derogatory comments about Plaintiff's medical conditions and light duty status. In August 2023, coworkers began complaining when Plaintiff remained on light duty beyond the documented return date. Management officials questioned the legitimacy of Plaintiff's medical needs and treated his accommodation requests with suspicion and hostility rather than the good faith required by law.

55. The harassment was sufficiently severe and pervasive to alter the conditions of Plaintiff's employment and create an abusive working environment. The cumulative effect of the

14

ongoing harassment caused Plaintiff significant emotional distress and affected his well-being. The harassment was ongoing and escalating, with Plaintiff forced to file multiple EEO complaints (HS-TSA-00221-2023, HS-TSA-01284-2024, and HS-TSA-01711-2024) as the harassment continued despite his protected activity.

56. Specific instances of harassment included supervisors discussing Plaintiff's protected medical information within earshot of other employees in violation of confidentiality requirements, heightened scrutiny and monitoring of Plaintiff's daily activities including when he clocked in and took breaks, disparate treatment compared to similarly situated employees without disabilities, management's failure to properly manage his light duty status causing confusion and conflict with coworkers, and a pattern of treating Plaintiff's disability-related needs as suspicious or burdensome.

57. Management knew or should have known of the harassment and failed to take prompt remedial action. The harassment was often perpetrated by management officials themselves, including TSM Blackwell and STSO Bustos, making their knowledge of the hostile environment undeniable. Despite Plaintiff filing multiple EEO complaints documenting the ongoing harassment, Defendants failed to take effective corrective action to stop the hostile treatment.

58. The hostile work environment was both disability-based and retaliatory in nature. Following each EEO complaint Plaintiff filed, the harassment intensified, creating a cycle of protected activity followed by increased hostility. This pattern demonstrates that the harassment was designed to punish Plaintiff for asserting his rights and to deter him from seeking the accommodations and equal treatment to which he was entitled under federal law.

59. The cumulative effect of the hostile work environment, combined with Defendants' other discriminatory actions, made Plaintiff's working conditions intolerable and contributed to the eventual determination that he was "not medically qualified" for his position. The hostile environment thus resulted in Plaintiff's termination from federal service on June 15, 2024.

60. As a result of the hostile work environment, Plaintiff suffered severe emotional distress, physical manifestations of stress including sleep disruption, damage to his professional reputation, and ultimately the loss of his federal career. Plaintiff is entitled to compensatory damages, injunctive relief requiring Defendants to take effective action to prevent and remedy hostile work environments based on disability, and attorneys' fees and costs under Section 505 of the Rehabilitation Act.

61. The pattern of harassment based on Plaintiff's disability and protected activity is demonstrated through numerous specific incidents spanning from 2020 to 2024: In January 2020, when Plaintiff filed a workers' compensation claim for a workplace injury, a management official told him "Are you that stupid to believe we will pay any of your bills. TSA will not pay anything for this." In December 2021, management required Plaintiff to change administrative leave to sick leave and yelled at him "I have not released you; you are going to sit back down in that chair." On July 24, 2022, management officials discussed Plaintiff's confidential medical information in a public area where coworkers could overhear. On November 24, 2022, STSO Bustos falsely accused Plaintiff of a security breach but refused to provide the CCTV footage when requested. In January 2023, after Plaintiff was injured in the parking lot and a supervisor confirmed it was covered by workers' compensation, TSA falsely denied the claim stating he was not injured at work,

despite two witnesses documenting the injury. On April 15, 2023, Lead TSO Baker called Plaintiff's leg brace "really stupid." On May 1, 2023, STSO Bustos told Plaintiff he must be at the checkpoint before his 3:30 AM start time and that management was "watching [him] very closely," while not imposing similar requirements on other employees. In September 2023, Manager Blackwell questioned whether Plaintiff's disability was "visible or valid." In October 2023, Manager Blackwell denied administrative leave requests using pretextual reasons while approving identical requests on other dates. This escalating pattern of harassment created an increasingly hostile environment that ultimately forced Plaintiff's constructive discharge.

## <u>COUNT V - VIOLATION OF PRIVACY RIGHTS</u>

### **(Rehabilitation Act § 504)**

62. Plaintiff realleges and incorporates paragraphs 1-61 above.

63. The Rehabilitation Act and its implementing regulations require that medical information obtained regarding the medical condition or history of an employee be collected and maintained on separate forms and in separate medical files and be treated as a confidential medical record. 29 C.F.R. § 1630.14(c)(1). This provision constitutes a substantive right under the Rehabilitation Act to maintain the confidentiality of medical information.

64. Defendants violated these confidentiality requirements when management officials STSO Bustos and TSM Holubec discussed Plaintiff's medical documentation in areas where other employees could and did overhear the conversation. Specifically, on July 24, 2022, Bustos and Holubec discussed Plaintiff's doctor's letter regarding his mask accommodation, allowing TSO Michael Vernatti to overhear them questioning why Plaintiff had only

recently submitted the doctor's note. TSO Verratti heard enough of the conversation to later question Plaintiff about why he had not brought a letter from his doctor sooner.

65. Further violations occurred when TSO Patrick Patterson observed TSM Holubec and STSO Bustos at the hallway entrance near the checkpoint with Plaintiff's medical documentation and overheard one of them saying "He just doesn't want to wear a mask." These management officials' discussion of Plaintiff's medical information in public areas where multiple coworkers could overhear spread Plaintiff's confidential medical information throughout the workplace.

66. These disclosures violated HIPAA and the Rehabilitation Act's confidentiality provisions. Even dates of medical appointments and timing of medical documentation constitute protected health information that must be kept confidential. Management's assertion that they "only spoke about dates" does not excuse the violation, as dates of service are explicitly protected under HIPAA regulations.

67. The improper disclosure of Plaintiff's medical information constitutes a per se violation of the Rehabilitation Act. While the Commission has held that disclosure must reveal diagnosis or symptoms to constitute a per se violation, the spread of false information about Plaintiff's medical documentation (claiming it was "months old" when it was submitted within one day of issuance) combined with speculation about his motivations for seeking accommodation ("he just doesn't want to wear a mask") effectively disclosed protected information about his medical condition and created a hostile environment.

68. As a direct result of these privacy violations, Plaintiff suffered humiliation, damage to his reputation among coworkers who came to believe he was fabricating medical needs, and a

18

chilling effect on his willingness to seek necessary accommodations. These violations contributed to the hostile work environment and warrant compensatory damages.

### COUNT VI - WORKERS' COMPENSATION RETALIATION/FRAUD

69. Plaintiff realleges and incorporates paragraphs 1-68 above.

70. Plaintiff suffered multiple workplace injuries during his employment with Defendants, including a January 2020 thumb injury that occurred in the baggage department and a January 30, 2023, knee injury from a fall in hazardous parking lot conditions that management knew about but failed to remedy.

71. Following his January 2020 workers' compensation claim, Plaintiff was subjected to retaliation. When Plaintiff submitted medical bills to Human Resources as instructed by the workers' compensation nurse, a management official called Plaintiff and stated "are you really that stupid to believe we will pay any of your bills. TSA will not pay anything for this."

72. Plaintiff specifically identified that "his thumb injury prompted [him] to utilize the worker's compensation process" as the basis for retaliation. The temporal proximity between his workers' compensation claim and Dickey's hostile response, combined with the explicit refusal to process legitimate medical bills, establishes a clear causal connection.

73. Following his January 30, 2023, knee injury in the icy parking lot, Defendants engaged in fraudulent conduct to deny Plaintiff's legitimate workers' compensation claim. Although Supervisory TSO Alexaundria Guy confirmed the injury was covered by workers' compensation and opened a case, and despite two employees witnessing Plaintiff's injury and documenting that he was "visibly limping and seemed like he was in a lot of pain,"

TSA falsely told the workers' compensation carrier that Plaintiff was not injured at work, causing the claim to be denied.

74. Retaliation for filing workers' compensation claims violates federal law and TSA policy. Defendants' pattern of discouraging and punishing employees for exercising their rights to workers' compensation benefits creates a chilling effect that deters employees from reporting workplace injuries and seeking necessary medical treatment.

75. As a result of Defendants' workers' compensation retaliation, Plaintiff was forced to bear medical costs he should not have incurred, suffered emotional distress from the hostile treatment, and was deterred from fully pursuing his rights under workers' compensation law. Plaintiff is entitled to compensatory damages for these violations.

## COUNT VII - DISCRIMINATORY FITNESS FOR DUTY DETERMINATION

76. Plaintiff realleges and incorporates paragraphs 1-54 above.

77. On June 11, 2024, Defendants issued a notice determining that Plaintiff was "not medically qualified" for his position as a Transportation Security Officer, with termination effective June 15, 2024.

78. The fitness for duty determination was based on discriminatory animus rather than legitimate medical assessment. The June 11, 2024 letter from Charles Kirkland, Assistant Federal Security Director, stated that based on Dr. Fabrice A. Czarnecki's medical evaluation dated May 1, 2024, Plaintiff was found unable to meet the "Medical and Psychological Guidelines for Transportation Security Officers (TSOs)" because his medical condition "provides restrictions of no lifting, pushing, pulling, or gripping greater than 10 pounds with your left hand."

79. This determination failed to consider whether Plaintiff could perform the essential functions with reasonable accommodations, as required by law. The letter listed TSO Essential Job Functions but made no mention of exploring accommodations such as team lifting, mechanical assists, or modified duty assignments that could enable Plaintiff to perform these functions. TSA's own policies require an individualized assessment and consideration of accommodations before finding an employee medically unqualified.

80. The determination letter explicitly stated that "TSO Ricky Gardner is Temporarily Not Medically Qualified" or "Not Medically Qualified for Full and Unrestricted Duty," effectively ending his TSO career. While the letter mentioned Plaintiff could "apply for other positions that align with your medical profile" through the "TSO Job Search Process," this option was illusory given that the medical determination would disqualify him from any TSO position.

81. The timing of this determination - following Plaintiff's multiple EEO complaints, ongoing requests for accommodation, and documented pattern of retaliation - evidences discriminatory and retaliatory motive. After tolerating Plaintiff's medical conditions for years with various light duty assignments and accommodations, Defendants suddenly determined he was unqualified only after he persistently advocated for his rights.

82. This adverse action violated Section 504's requirement that employment decisions be based on actual ability to perform essential functions with reasonable accommodation, not on stereotypes or assumptions about disabilities. Defendants' failure to engage in the interactive process before making this determination, and their reliance solely on medical restrictions without considering accommodations, further violated their obligations under federal law.

83. As a direct result of this discriminatory fitness for duty determination, Plaintiff was terminated on June 15, 2024, losing his federal employment, career prospects, income, benefits, and suffering severe emotional distress.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff respectfully requests that this Court:

A. Declare that Defendants' actions violate the Rehabilitation Act and other applicable laws;

B. Order Defendants to cease all discriminatory and retaliatory practices, require implementation of anti-discrimination training, and mandate proper reasonable accommodation procedures;

C. Award compensatory damages in the amount of TEN MILLION DOLLARS ($10,000,000) including but not limited to:

    a. Back pay and lost benefits from constructive discharge

    b. Front pay in lieu of reinstatement given the severity of the hostile work environment

    c. Compensatory damages for severe emotional distress, pain, suffering, and humiliation

    d. Out-of-pocket medical expenses and costs incurred due to Defendants' discriminatory conduct

    e. Damages for loss of federal career and retirement benefits;

D. Award punitive damages to the extent permitted by law for Defendants' willful and malicious conduct;

E. Award attorneys' fees and costs pursuant to 29 U.S.C. § 794a and other applicable statutes;

F. Award pre- and post-judgment interest;

G. Grant such other and further relief as this Court deems just and proper.

**JURY DEMAND**

Plaintiff demands a trial by jury on all issues so triable.

Respectfully submitted,

*/s/ Kristi S. Fulnecky*

Kristi S. Fulnecky, MO Bar # 59677

FULNECKY LAW, LLC
2627 W Republic Rd., Ste.
A-108 Springfield, MO
65807
417-882-1044 phone
kristi@fulneckylaw.com

ATTORNEY FOR PLAINTIFF

23

## VERIFICATION

I, Rick Gardner, declare under penalty of perjury that I have read the foregoing Complaint and that the facts stated therein are true and correct to the best of my knowledge, information, and belief.

_Rick Gardner_
RICK GARDNER

10/10/2025
Date

State of Missouri    )
                     ) ss.
County of Greene     )

_Rick Gardner_____, of lawful age, being duly sworn on oath, states that he is the Plaintiff named above and that the facts stated in the petition are true according to his best knowledge and belief.

Subscribed and sworn to before me this **10th** day of **Oct.**, 20**25**.

My commission expires:

_6/27/2028_

_Jenny Tune_
Notary Public

Jenny Tune
Notary Public, Notary Seal
State of Missouri
Lawrence County
My Commission Expires 6/27/2028
Commission # 20373728

24